THAYER D. WHITE *v.* HANNAH E. SEATON; CAMBRIDGE CULBERTSON ET AL *v.* H. E. SEATON.

**Land—Sale of—Failure of Title—Fraud and Mistake—Rescission—Burden of Proof.**

It is a well established principal that a purchaser who has accepted a conveyance cannot afterwards have a rescission of the contract unless it be for fraud or mistake shown to have operated on him when he accepted the deed and the burden of proof is on the party alleging fraud and mistake.

**Subsequent Purchasees—Cross Petition—Rescission.**

A contract will be rescinded on cross-petition of a vendee, who has subsequently purchased a part of the land from the party who is seeking to rescind the contract of his purchase, on the ground of fraudulent statements made to him, where he has represented to his vendee that the statement he complains of were true.

APPEAL FROM GREENUP CIRCUIT COURT.

November 26, 1867.

OPINION OF THE COURT BY JUDGE HARDIN:

About the year 1787 there was patented to Thomas Keith, of the State of Virginia, a tract about 26,000 acres of land, now

embraced by the counties of Lewis and Greenup, in this State, about 12,000 acres of the land lying in Greenup County. Keith sold and conveyed the whole of the land to Joshua Harland, of the State of Pennsylvania, by a deed made in October, 1794, but not recorded until October, 1801.

After the death of Keith, Samuel Seaton, who resided in Greenup County, set up a claim to the land under a deed from Keith's heirs made in 1845, and proceeded to erect on that part of the land lying in Greenup County, and which was supposed to include about 12,000 acres, the iron manufacturing establishment called "Newhampshire Furnace," and on the 14th day of September, 1848, he executed a mortgage of the land in Greenup County, including the Newhampshire furnace, to John Culver to secure Culver in a debt of $7,656.44 he owed Culver, and also to indemnify him in large amounts for which Culver was bound as his surety.

Seaton died, leaving a will by which he devised the land and iron works to his widow, Hannah E. Seaton, who, by a deed of quit claim dated the 1st day of April, 1853, sold and conveyed to Thayer D. White the one undivided half of her interest in the Newhampshire furnace and land in Greenup County, with certain reservations, for the price of $17,500, for which White executed several notes payable at one, two and three years. On the 10th day of September, 1853, White sold and conveyed by a quit claim deed to Thomas Davisson an undivided interest of one-sixteenth part of Keith's survey in Greenup County, and in said furnace and property connected with it, for the price of $2,175, for which White took Davisson's notes.

And on the 1st day of June, 1854, White sold and conveyed by a like deed to Cambridge Culbertson one undivided fourth part of said property, or half the interest conveyed to White by Hannah E. Seaton, for the price of $10,000, for which Culbertson executed several notes to White.

Mrs. Seaton sold and conveyed her other moiety in the property to other parties, but subsequently cancelled the sale, and took a reconveyance of it.

After having transferred part of White's notes to Culbertson, and others to whom she was liable upon recourse as assignor of the notes, said Hannah E. Seaton brought this suit in equity, against White and his vendees, Harrison and Culbertson, and

others alleged to be indebted to him, to attach and subject the choses in action of White to the payment of the notes for purchase money on White held by her and her assignees.

In the meantime, a suit was prosecuted against Mrs. Seaton and others in possession, by the heirs of Joshua Harland, to recover the whole of the land under the deed from Thomas Keith to Harland, and that suit having been decided for the defendants in the court below, the judgment was reversed by this court, and the title and right of Harland's heirs to recover was finally established (18 B. Monroe, 325).

White in his defense resisted the recovery sought by Mrs. Seaton, and by a cross petition alleged that he was induced to enter into the contract through mistake on his part, and by misrepresentation and fraud practiced upon him by John Seaton, the son and agent of the plaintiff, who negotiated the trade. That said agent falsely assured him that the pretended deed from Keith to Harland was a forgery, and that the heirs of the latter could not recover in their suit, and moreover grossly deceived him as to the quantity and quality of certain leads of iron ore on the land, and induced him to believe large and valuable quantities of ore were included within the boundaries of the land, which were not in fact situated upon it, and that by all these false representations and assurances of said agent, he was induced to purchase the interest sold him at the price of $17,500, which was the full value of it, if all of said representations had been true, and was so also induced to accept the deed without warranty. The cross petition seeks a rescission of the contract.

The averments of the cross petition importing fraud and mistake, are replied to and controverted by Mrs. Seaton; she does not profess however to deny the material averments from personal knowledge of what transpired between her agent and White.

Davisson and Culbertson, by their answers to the original petition, as well as by cross pleading between them and White, seek to rescind their contracts of purchase with White.

The court below, besides deciding several questions not now before us on this appeal, adjudged a confirmation and enforcement of the sale to White, and also of the sales from White to Davisson and Culbertson, and from this judgment both White and Davisson and Culbertson have appealed to this court.

It is a well established principle that a purchaser who has

2

accepted a conveyance cannot afterwards have a rescission of the contract, unless it be for fraud or mistake shown to have operated on him when he accepted the deed. The facts alleged by White in his cross petition conducing to show that he was deceived by John Seaton, who acted as the agent of his mother, and that Seaton induced him to enter into the contract and accept the deed by false and fraudulent assurances as to the quality and mineral wealth of the land, as well as the title and claim of Harland's heirs, or by representing the deed of Harland to be a forgery, are, we think, substantially and sufficiently controverted by Mrs. Seaton; and the burden of proving the facts relied on rests upon White. They are not proved in any manner except by White's own deposition, which of course cannot be regarded as evidence for himself. We cannot infer from the recitals in the deed, nor from the fact, that the price agreed to be paid seems to be exhorbitant for so doubtful a claim already imperilled by litigation, that White did not enter into this hazardous, and as it has resulted, most unfortunate purchase, from reasons and considerations wholly different from any of those alleged in his cross petition as having been falsely suggested to him by Seaton. If, in the absence of direct evidence, we are to indulge in inferences, it seems to us not improbable that White purchased and accepted the deed for the land as a chancing bargain, having confidence no doubt that the claim would be sustained in the then pending litigation with Harland's heirs. He discloses the fact himself that he had knowledge of the claim and suit of Harland's heirs, and it is not unreasonable to suppose that he relied on other evidence than that of John Seaton as to the probable danger of losing the land, and accepted the deed without warranty because he was willing, at the stipulated price, to risk the title.

The case presented by the answer and cross petition of Culbertson and Davisson, for a rescission of their contracts with White, is we think much better sustained. All the charges made by White, importing fraud and misrepresentation on the part of Seaton to induce him to purchase, are relied on by Culbertson and Davisson as grounds for avoiding the deeds to them, they alleging that they were induced to buy of White and accept his deeds not only by his own representations, but on the faith also of the alleged statements and assurances of Seaton to White, which were communicated to them as true by White.

On the issues formed on the cross petitions of Culbertson and Davisson against White and others, White seems to have been a competent witness for them, although his deposition was not competent evidence for himself or those united with him in the issue involving the validity of the conveyance from Mrs. Seaton to him.

The testimony of White conducing to show that Davisson and Culbertson were deceived as to the validity of the claim of Harland's heirs, and as to other material facts, by the assurances of Seaton to White, communicated to them by White, together with other strong equitable considerations appearing in the record, was, we think, in the absence of contradictory testimony, sufficient to entitle said Davisson and Culbertson to a rescission of the contracts between White and them, on their cross petitions.

Wherefore on the appeal of White the judgment is affirmed; but on the appeal of Culbertson and Davisson it is reversed, and the cause remanded, with directions to overrule the exceptions to the deposition of White, so far as Culbertson and Davisson are concerned, and for further proceedings not inconsistent with this opinion.